### WILLIAM FREEMAN vs. EUNICE D. LEIGHTON.

### Washington.   Opinion August 17, 1897.

*Deed.   Description.   Flats.   Upland.*

Under the colonial ordinance of 1641-7, concerning flats, conveyances of the uplands are commonly expected to convey the adjoining flats.

But the proprietor of the upland and adjoining flats or shore has "the propriety" of both, and hence may convey the whole or any part of his "propriety." He may convey the uplands alone and retain the flats, or convey the flats alone and retain the uplands.

In an instrument of conveyance of land bordering upon tide water, a description of the boundary lines as running "to the shore," and "thence by the shore and upland to the first bound," operates to sever the shore from the upland and to exclude it from the conveyance.

ON REPORT.

This was a writ of entry to recover one-sixth part of a piece of sea shore and flats lying in Milbridge. It was admitted that William Freeman, father of the plaintiff, on July 6, 1837, owned the shore and flats claimed by the plaintiff, together with the upland connected therewith. That on July 6, 1837, Freeman, senior, conveyed to Solon Turner and Nathaniel Pinkham the following described premises: "Beginning at the Southeast corner of

the James Wallace lot, on the west side, and near the mouth, of Narraguagus river; thence running west one hundred and sixty-eight rods; thence south two hundred and seventy-six rods; thence east to the shore one hundred and ninety-two rods; thence northerly by the shore and upland to the first bound." The shore extends the whole length of the last described line. The premises in controversy are the shore and flats, between the upland and low water marks of the described lot. Defendant claimed to own the shore and flats under the above deed through mesne conveyances, and the plaintiff by descent from his father.

The parties agreed that if this deed from Freeman to Turner and Pinkham conveyed the shore and flats, the plaintiff was to become nonsuit, otherwise case to stand for trial.

*Geo. E. Googins and William Freeman*, for plaintiff.

*H. H. Gray*, for defendant.

When upland is conveyed without the flats, it must be by clear and unequivocal description in the conveyance excluding the flats. The owner of the upland adjoining tide water prima facie owns to low water mark; and does so in fact unless the presumption is rebutted by sufficient proof. *Montgomery* v. *Reed*, 69 Maine, 510, 514; *Doane* v. *Willcutt*, 5 Gray, 328, 335.

The following terms have been held to convey to low water mark: "By the sea or beach," "by the sea or shore," "by the sea or flats." *Doane* v. *Willcutt*, 5 Gray, 328; *Saltonstall* v. *Proprietors, etc.*, 7 Cush. 195.

Counsel also cited: *King* v. *Young*, 76 Maine, 66; *Babson* v. *Tainter*, 79 Maine, 370; *Stevens* v. *King*, 76 Maine, 197; *Pike* v. *Monroe*, 36 Maine, 309; *Mayhew* v. *Norton*, 17 Pick. 357; *Jackson* v. *B. & W. R. R.* 1 Cush. 575, 579; *Storer* v. *Freeman*, 6 Mass. 435, 440.

The first call in the description, beginning at low water mark, the third call "to the shore" might naturally be presumed to mean low water side of the shore, and hence by that call we are taken to low water mark.

The last call in the deed, "thence by the shore and upland to

the first bound", would not conflict with this position if it were not for the word "upland".

If the call read "thence by the shore to the first bound", there would be no contention that the deed did not convey to low water mark and thus convey the flats.

The word "upland" is repugnant to and inconsistent with the rest of the description. When there is a conflict in terms or in the parts of a description, there are rules of law which aid in a construction of the conveyance. Ambiguous words are to be construed most favorably to the grantee. Boone, R. Prop. § 304; *Esty* v. *Baker,* 50 Maine, 325, 331, and cases.

Where the two inconsistent parts of the description are equally balanced the grantee may choose that which is most favorable to him. 2 Am. & Eng. Ency. p. 498, and cases cited; *Esty* v. *Baker,* 50 Maine, 331; *Melvin* v. *Proprietors, etc.,* 5 Met. 27, and cases cited. The first part of the description usually prevails over the latter part, if both appear in the premises of the deed. 2 Am. & Eng. Ency. p. 498.

If then, starting at low water mark in the first call and running to low water mark in the third call, we reject the inconsistent and repugnant word "upland" the last call will be, "thence by the shore to the first bound" and the flats pass by the deed. If however we reject the words "near the mouth of Narraguagus river" we have no starting point as the call also locates the "South East corner of the James Wallace lot" at the same point, and hence our deed would be of no effect. If we should attempt to give effect to both of the inconsistent parts of the description, and also say that the third call only extends to the high water side of the shore, we should have an impossible description and the lines could not be made to meet, for the call "thence by the shore and upland" could never reach the first bound at low water mark. But if the inconsistent word "upland" be rejected the description is plain and the flats are included. *Parks* v. *Loomis,* 6 Gray, 467, 471, 472; 2 Am. & Eng. Ency. of Law, p. 498, and cases cited.

If the parties did not intend to convey the flats it does not seem

that they would have commenced at low water mark, and thence run west 168 rods, and thus include in their measurement twenty-five or thirty rods of flats; but would have commenced their measurement at the upland, which they could just as well have done.

The presumption would naturally be also that in the third call, "thence east to the shore 192 rods", that they again measured across the flats, the difference in the length of the side lines probably being the difference in the width of the flats at the two points.

From the cases cited and the general well-known rules for the construction of deeds, it seems that the word "upland" must be rejected in order that the intention of the parties must prevail.

If the intention of the parties is considered obscure, then the first call must govern; the deed must be taken most strongly against the grantor and most favorably for the grantee; the presumption that the flats belong to the owner of the upland stands unrebutted, and the title to the flats held to have passed by the deed from the ancestor of the plaintiff and to be now in the defendant.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, WISWELL, SAVAGE, JJ.

EMERY, J.   It is true, as contended by the defendant, that the colonial ordinance of 1641–7 concerning flats evidently intended their annexation to the adjoining upland in ownership.   The language of the ordinance is:  "It is declared that in all creeks, coves and other places about and upon the salt water where the sea ebbs and flows, the proprietor of the land adjoining shall have propriety to low water mark," etc.   The flats are thus made in a measure appurtenant to the adjoining upland.   Conveyances of the upland are commonly expected to convey the adjoining flats.

But the proprietor of the upland and adjoining flats or shore has the "propriety" of both, and hence may convey the whole or any part of his "propriety."   He may convey the upland alone and retain the flats, or convey the flats alone and retain the upland. This is a familiar proposition enunciated in numerous decisions

from *Storer* v. *Freeman*, 6 Mass. 435, to *Brown* v. *Heard*, 85 Maine, 294. The question, therefore, often arises, as in this case, whether the language used in the conveyance of the upland shows an intention to exclude and retain the adjoining flats or shore.

The land, the subject matter of this conveyance, is situated upon the west side of the river, a river in which "the sea ebbs and flows." The grantor declared in terms that the south line should extend east "to the shore." He then declared that the next line, the east line, should extend northerly "by the shore and by the upland," to the first bound.

He thus fastened this last line to the eastern edge of the upland and the western edge of the shore. He drew it between the upland and the shore. The court cannot draw it in any other place or direction. This line, drawn by the grantor and accepted by the grantee, separates the shore from the upland and excludes it from the conveyance.

The defendant reminds us that this last line is declared to run to the "first bound," which he urges is on the east or river side of the shore, and hence that the last line must run on that side of the shore to reach the first bound. Even if it were true that the first bound is on the river side of the shore, which fact does not appear, the line in question is too firmly wedged between the upland and the shore, by the explicit language describing it, to be wrenched away by the description "first bound" as the end of the line. The "first bound" must be held to be the first boundary line, to which line or "bound" the last line extends, hitting it at a point between the shore and the upland.

*Action to stand for trial.*